STATE of Missouri, Respondent,

v.

Stephen L. IRVIN, Appellant.

No. 41822.

Missouri Court of Appeals,
Eastern District,
Division Three.

Feb. 16, 1982.

Charles E. Kirksey, Jr., St. Louis, for appellant.

John Ashcroft, Atty. Gen., Kristie Green, Jefferson City, George Westfall, Pros. Atty., Clayton, for respondent.

REINHARD, Presiding Judge.

Defendant was convicted by a jury of burglary, second degree, a violation of § 560.070 RSMo. 1969 and stealing, a violation of § 560.110 RSMo. 1969. He was sentenced by the court as a second offender to nine years with the Department of Corrections on the burglary charge and three years on the stealing charge, the sentences to run consecutively. Defendant appeals. We affirm.

There is no challenge to the sufficiency of the evidence. The jury could have found that about 7:00 a. m. on September 29, 1978, defendant and two accomplices broke a side

window and entered the Colonial Village Pharmacy in Webster Groves and took four bottles of the drug Talwin and change from a cash register.

Defendant's first point on appeal arises from the trial court's response to his conduct at trial. Defendant initially retained a private attorney to represent him. The trial court, however, granted his motion to withdraw on March 19, 1979, and on that date, appointed another attorney to represent him. This attorney met with the defendant on several occasions prior to trial.

On the first day of trial, May 9, 1979, prior to voir dire, defendant vociferously argued with the court that he did not want to be represented by his present attorney. The trial court warned defendant that if the interruptions continued he would either be gagged or removed from the courtroom. After a panel of prospective jurors was brought in, the defendant disrupted the proceedings on two occasions. His outburst was so flagrant on the second occasion the trial court dismissed the panel.

A new panel of jurors was brought in the next morning. Prior to commencement of the proceedings, though, the trial court warned the defendant:

> [Y]our activity yesterday was not acceptable .... You're not to speak out voluntarily and disrupt this proceeding. If you do, the Court will exclude you from the hearing. And you can blame only yourself for it. Do you understand me?
>
> THE DEFENDANT: Yes, sir. I understand what you're saying....

A jury was selected, but before the first witness was called, the defendant disrupted the proceedings again and attacked his attorney. The trial court ordered him removed from the courtroom.

The state presented its first two witnesses before the defendant agreed to behave himself and was allowed to return to the courtroom. He was handcuffed throughout the remainder of the trial in the presence of the jury.[1] There was no more serious disruption until the close of the case. While the judge was reading the instructions to the jury, the defendant interrupted him and created another disturbance. Again, he was ordered removed from the courtroom. He did not return until the verdict of the jury was read.

Defendant in his first point on appeal contends the trial court erred in ordering him excluded from the courtroom and allowing him to be handcuffed in the presence of the jury.

■ The Sixth Amendment to the United States Constitution provides that the accused shall enjoy the right to be confronted with the witnesses against him. The Fourteenth Amendment makes this guarantee applicable to the states. *Pointer v. Texas*, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1963). One of the most basic rights of the confrontation clause is the accused's right to be present in the courtroom at every stage of his trial. *Lewis v. United States*, 146 U.S. 370, 13 S.Ct. 136, 36 L.Ed. 1011 (1892).

In *Illinois v. Allen*, 397 U.S. 337, 342–43, 90 S.Ct. 1057, 1060–61, 25 L.Ed.2d 353 (1970), however, the Supreme Court stated this "privilege ... may be lost by consent or at times even by misconduct." Further, the court held:

> [A] defendant can lose his right to be present at trial if, after he has been warned by the judge that he will be removed if he continues his disruptive behavior, he nevertheless insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom.
>
> . . . .

---

1. This is according to defendant, and not disputed by the state. There is nothing in the record to indicate when the defendant was first handcuffed. On the third day of trial, though, defendant complained in the presence of the jury that his handcuffs were too tight. The state has not disputed defendant's contention so we shall accept it as true.

[T]here are at least three constitutionally permissible ways for a trial judge to handle an obstreperous defendant . . . (1) bind and gag him, thereby keeping him present; (2) cite him for contempt; (3) take him out of the courtroom until he promises to conduct himself properly. *Id.* at 342–43, 90 S.Ct. at 1060–61.

■ Here, the defendant was warned repeatedly that his disruptive behavior could result in exclusion. Despite this, defendant disrupted the courtroom on two more occasions, including an attack upon his attorney. Defendant had ample warning that his recalcitrant actions would result in exclusion. On both occasions, at issue here, the defendant's disorderly conduct warranted the sanction of banishment from the courtroom. We find no error.

■ We also find no merit to his contention that allowing him to be handcuffed in the presence of the jury was error. Not only does *Allen* sanction such action, so does Missouri case law. We acknowledge the obvious prejudice that results when an accused is brought before a jury with his hands chained, as jurors will view the accused as "being in the opinion of the judge a dangerous man and one not to be trusted, even under the surveillance of officers." *State v. Kring*, 64 Mo. 591, 593 (Mo.App. 1877).

■ Still, the trial court is charged with maintaining an orderly procedure in the courtroom, and the judge may properly exercise his discretion in determining the restraints necessary to maintain order. *State v. McGinnis*, 441 S.W.2d 715, 717 (Mo. 1969). To support such action there must be "good reason" or "exceptional circumstances." *State v. Johnson*, 499 S.W.2d 371, 374 (Mo.1973); *State v. McGinnis*, 441 S.W.2d 715 (Mo.1969); *Bibbs v. State*, 504 S.W.2d 319, 321 (Mo.App.1973).

In light of the defendant's disruptive behavior, including the attack on his attorney, we find no abuse of the court's discretion in ordering the defendant placed in handcuffs.

■ Finally, defendant contends the trial court erred in refusing to allow him to testify in his own behalf. His claim arose under the following circumstances. After the state closed its case, defense counsel stated, outside the presence of the jury, that he was not calling the defendant to testify because: 1) the defendant told him he would commit perjury on the stand;[2] 2) he had at least five prior felony convictions; and 3) the defendant's demeanor would leave a profoundly negative impression on the jury. The defendant stated to the court that he would like to take the witness stand. The court denied his request. Defendant contends this violated his constitutional right to testify.

This contention has been answered by *State v. Hutchinson*, 458 S.W.2d 553 (Mo. banc 1970), where our court stated:

We believe the assumption that the right to testify is a constitutional right is erroneous. The assumption ignores the history of the right. The common law rule, when our Nation was founded, was that an accused in a criminal trial could not testify in his own behalf. An accused was first given the right to testify in Missouri by statute in 1877 (V.A.M.S., § 546.260), and in the federal courts by statute in 1878 (18 U.S.C. § 3481) . . . .

The extended discussions in *Ferguson v. Georgia*, 365 U.S. 570, 573–582, 81 S.Ct. 756[, 758–763], 5 L.Ed.2d 783 . . . conclusively demonstrate that the right of a criminal defendant to testify in his own behalf is a statutory right and not a constitutional right. *Id.* at 554.

Defendant asserts that there have been pronouncements by the United States Supreme Court which casts doubt on *Hutchinson*. Defendant cites *Harris v. New York*, 401 U.S. 222, 225, 91 S.Ct. 643, 645, 28 L.Ed.2d 1 (1971), where the court stated, "Every criminal defendant is privileged to

---

**2.** At no time did defendant challenge counsel's claim that he would commit perjury.

testify in his own defense, or to refuse to do so." But, *Harris*, in fact, reinforces the correctness of the trial court's decision. The quotation from *Harris* continues, "But that privilege cannot be construed to include the right to commit perjury" at 225, 91 S.Ct. at 645.

Further, it is evident that had the defendant taken the witness stand, in light of his earlier behavior, neither the court nor his attorney could have controlled his testimony. A defendant has no more right to take the stand and "testify in a way degrading to the judicial system than he has to rob a bank or to assault a constable." *United States v. Ives*, 504 F.2d 935, 941 (9th Cir. 1974). The trial court's ruling prevented any further attack on the dignity and decorum of the courtroom. Under the circumstances of this case, we find no trial court error.

Defendant's contention that the trial court's actions denied him a fair trial is ludicrous. A review of the record establishes that any prejudice to defendant was a result of his own misbehavior in this case. The court was exceedingly patient with a hostile, uncooperative defendant and both trial counsel and the court went to great lengths to assure him a fair trial.

Affirmed.

SNYDER and CRIST, JJ., concur.